UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JAMES PINE, et al.,

                                        Plaintiff,

            vs.

                                                    9:09-CV-1198
GREG SEALLY, et al.,                                (DNH/ATB)

                                        Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This matter was referred by U.S. District Judge David N. Hurd, for Report and

Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

The case was transferred to me on January 4, 2010, following the retirement of U.S.

Magistrate Judge Gustave J. Di Bianco.  (Dkt. No. 15).

        Plaintiffs filed this civil rights complaint, pursuant to 42 U.S.C. § 1983,

regarding incidents that occurred during their incarceration at Greene County Jail

("Greene").[1]  Robert Cuttita and Deborah Clark ("State Defendants") filed a motion to

dismiss plaintiffs' complaint ("State Defendants' Motion") on March 17, 2010.  (Dkt.

No. 22).  Defendants Peter Bennett, Hulbiki, John Jarvis, Donna Juliano, Ken Liese,

Brian McMannis, Gregory Seeley, Donnie Skimmerhorn, Michael Spitz, Mike

---

[1] Plaintiffs are currently in the custody of the New York State Department of Correctional
Services ("DOCS"), with the exception of Lee Goergen, who has been released on parole and has
not updated his address with the court.  *See* http://nysdocslookup.docs.state.ny.us.

Sutherland, Edward Vorheese, Ed Warga, and Steven Worth ("County Defendants") filed a motion to dismiss plaintiff's complaint ("County Defendants' Motion") on April 15, 2010. (Dkt. No. 49). Plaintiff Burroughs filed a response (Burroughs's Response) to the State Defendants' Motion and the County Defendants' Motion on June 22, 2010. (Dkt. No. 55). The county defendants filed a memorandum of law in reply and in further support of their motion to dismiss. (Dkt. No. 69). Defendants Richard Hussey and Don Rivenburg ("Additional County Defendants") filed a motion to dismiss plaintiffs' complaint ("Additional County Defendants' Motion") with an accompanying memorandum of law on December 8, 2010. (Dkt. Nos. 79, 80). Plaintiff Burroughs filed a response to the Additional County Defendants' Motion on December 29, 2010. (Dkt. No. 82).

## DISCUSSION

## I.   <u>Facts and Claims</u>

Plaintiffs divide the section of their complaint,[2] entitled "Facts," according to the claims they assert and the dates they associate with those claims.[3] Plaintiffs' first claim that from November 2006 to September 2007, they were "sexually harassed on a

---

[2] Plaintiff Lee Goergen filed a motion to intervene (Dkt. No. 20) that was granted on April 6, 2010. (Dkt. No. 46). Plaintiff Goergen filed his complaint on April 6, 2010, which is in all respects identical to the complaint filed at Docket No. 1, with his name added as a plaintiff. For ease of reference, the court will only refer to the complaint filed at Docket No. 1.

[3] Plaintiffs do not number the paragraphs or pages in their complaint, so the court will refer to material by citing to the page number assigned by the Case Management/Electronic Case Files (CM/ECF) system.

daily basis by defendant Beojekian, who would fondle his exposed penis during strip searches and at times touch [the plaintiffs]".[4]  (Compl. p. 7).

Plaintiffs' second claim is that from December 2006 to October 2007, defendants Snyder, Hussey, Schnur, and Rivenburg "racially harassed [the plaintiffs] on several occasions . . . by wearing a white sheet with a hood, carrying a noose . . . [and] threaten[ed] to hang us because we were niggers and nigger lovers."[5]  (Compl. p. 8).

Plaintiffs' third claim is that from October 2006 to August 2008, defendants Snyder, Skimmerhorn, Sutherland, McMannis, Jarvis, Voorheese, Rivernburg, Liese, and Warga assaulted plaintiffs "often," and spit in plaintiffs food or denied them food. (Compl. p. 8).

Plaintiffs' fourth claim is that from October 2006 to August 2008, defendants Seeley, Hussy, Schnur, Worth, and Spitz exposed plaintiffs to "unsanitary living

---

[4]As described above in the facts, Beojekian is the only person involved in the alleged touching.  The court assumes that plaintiff lists the other individuals in an attempt to establish supervisory liability based on their knowledge of Beojekian's history.  *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986) (supervisory liability can be established if (1) that official directly participated in the infraction; (2) after learning of a violation through a report or appeal, he or she failed to remedy the wrong; (3) the official created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; or (4) he or she was grossly negligent in managing subordinates who caused the unlawful condition or event). Because the court is recommending dismissal on the merits of plaintiffs' claims, no analysis of personal involvement is necessary.

[5] Although plaintiffs' cause of action is not clear, it appears from plaintiff Burroughs' response filed at Docket No. 55 that defendant Snyder was the person who actually made the threats, and plaintiff lists the other people in an attempt to establish supervisory liability.  *See* Dkt. No. 55, ¶ 10;  note 4, *supra*, and accompanying text.

conditions," where they were exposed to black mold, lead paint, and lead pipes. (Compl. p. 9). Plaintiffs were also exposed to scabies, "Mercer[6]," crabs, bed bugs, "T.B."[7], hepatitis, and other diseases "due to there being no medical tier." (Compl. p. 9).

Plaintiffs fifth claim is that from December 2006 to August 2008, defendants Seeley, Hussey, Worth, Spitz, Schnur, Rivenburg, Liese, Voorheese, Warga, Cuttita, and Clark did nothing to address plaintiffs' complaints of their rights being violated. (Comp. p. 9).

Plaintiffs' sixth claim is that from October 2006 to August 2008, defendants Hussey, Seeley, Worth, Spitz, Schnur, Cuttita, and Clark refused plaintiffs' requests for legal reference material, the law library is outdated and there is no law clerk.[8] (Compl. p. 10).

Plaintiffs' seventh claim is that from November 2006 to August 2008, defendants Hussey, Schnur, Rivenburg, Spitz, Liese, Warga, Voorhese, Bennett, Seeley, and Worth lost and misplaced plaintiffs' mail. (Compl. p. 10).

Plaintiffs' eighth claim is that from October 2006 to August 2008, defendants Seeley, Spitz, Hussey, and Worth did not have a "trained person" handling plaintiffs'

---

[6] The court assumes plaintiffs mean "MRSA," or methicillin-resistant staphylococcus aureus.

[7] Tuberculosis.

[8] It is unclear who denied legal materials to the plaintiffs.

medications, causing plaintiffs to "often" be sick from receiving the wrong medication.  (Compl. p. 11).

Plaintiffs' ninth claim is that from October 2006 to August 2008, defendants Hussey, Seeley, Schnur, Spitz, Liese, Voorhese, Warga, Rivenburg, and Bennett denied plaintiffs "legal calls" to their attorneys and denied plaintiffs postage for legal mail.[9]  (Compl. p. 11).

Plaintiffs' tenth claim is that from November 2006 to August 2008, defendant Warga refused to investigate any of the grievances plaintiffs filed.  (Compl. p. 12).

Plaintiffs' eleventh claim is that from October 2006 to August 2008, defendants Hulbiki and Juliano "refused to properly treat [plaintiffs]" and refused to let plaintiffs "see an emergency room doctor until infections from [MRSA] spread, a hernia got worse, and blood began to leak out of the penis."  (Compl. p. 12).

Plaintiffs twelfth claim is that from January 2008 to August 2008, defendants Seeley, Spitz, Worth, Liese, Warga, and Voorheese "locked in" plaintiffs, gave them no privileges, gave them only one hour of visitation per week, did not let plaintiffs make collect phone calls, refused to let plaintiffs purchase stamps or hygiene items, prevented plaintiffs from communicating with their attorneys about plea bargains, and prevented plaintiffs from communicating with their loved ones at all.  (Compl. p. 13).

Plaintiffs' thirteenth claim is that from October 2006 to August 2008,

_____

[9]Again, it is unclear who denied plaintiffs legal calls or postage for legal mail.

defendants Hussey, Seeley, Worth, Schnur, and Spitz denied plaintiffs "Elder 'Rastafarian' or Eman [sic] 'Muslim' services . . . special diets, the right to Ramadan," and Jewish inmates were not allowed to celebrate Passover and were not given kosher diets.  (Compl. p. 13).

## II.    <u>Relief Sought</u>

Plaintiffs seek injunctive relief,[10] in addition to significant compensatory and punitive damages.  Presently before the court are the County Defendants' Motion,[11] the State Defendants' Motion, and the Additional County Defendants' Motion to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). This court recommends that the State Defendants' Motion be granted, the Additional County Defendants' Motion be granted, and the County Defendants' Motion be granted in part and denied in part for the reasons discussed below.

## III.    <u>Motion to Dismiss—Legal Standards</u>

To survive dismissal for failure to state a claim, the complaint must contain

---

[10] Plaintiffs seek injunctive relief for each of their claims, but because they are no longer being held at Greene County Jail, their claims for injunctive relief are moot.  *See Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008) (plaintiff's transfer moots his claims related to his conditions of confinement claims); *Mawhinney v. Henderson*, 542 F.2d 1, 2 (2d Cir. 1976) (planitiff's transfer moots claims for injunctive relief).

[11] Plaintiffs have failed to serve defendants Snyder and Schnur, who therefore are not participating in the motions to dismiss.  Failure to serve these defendants could be grounds for dismissal pursuant to Fed. R. Civ. P. 4(m), but because the court is recommending dismissal of all plaintiffs' complaints for failure to state a claim except for one that does not involve defendant Snyder or Schnur, it also recommends dismissing the complaint as to the unserved defendants for failure to state a claim pursuant to 28 U.S.C. 1915(e)(2)(B)(ii).  This section provides that the court may dismiss an *in forma pauperis* action *sua sponte* at any time if the court determines that, *inter alia*, the action fails to state a claim on which relief can be granted.

sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice.  *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  Plaintiff's factual allegations must also be sufficient to give the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*, 550 U.S. at 555 (citation omitted).

When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 71 (2d Cir. 1995). The court must heed its particular obligation to treat *pro se* pleadings with liberality. *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005); *Tapia-Ortiz v. Doe*, 171 F.3d 150, 152 (2d Cir. 1999) (*per curiam*).

In deciding a motion to dismiss, the court may review documents integral to the complaint upon which the plaintiff relied in drafting his pleadings, as well as any documents attached to the complaint as exhibits, and any statements or documents incorporated into the complaint by reference.  *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d at 72 (the court may take into consideration documents referenced in or attached to the complaint in deciding a motion to dismiss, without converting the motion to one for summary judgment).

## IV.    **Conditions-of-Confinement**

Allegations of mistreatment of pretrial detainees in state custody are brought under the Due Process Clause of the Fourteenth Amendment.  *See Caiozzo v. Korman*, 581 F.3d 63, 69 (2d Cir. 2009).  It has been held that because a pretrial detainee has not been "convicted," the proper inquiry is whether the conditions of confinement amount to punishment under the Due Process Clause, not whether the "punishment" is cruel and unusual under the Eighth Amendment.  *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (contrasting sentenced prisoners with pretrial detainees).  However, the same standard applies to claims of deliberate indifference to a serious threat to the health or safety of a person in custody, regardless of whether they are brought under the Eighth Amendment, relating to convicted prisoners, or under the Fourteenth Amendment for pretrial detainees.[12]  *See Caiozzo v. Korman*, 581 F.3d at 72.

### A.    **Living Conditions**

Plaintiffs' fourth cause of action is based on alleged exposure to black mold, lead in pipes, and lead in paint while they were housed at Greene County Jail.

#### 1. Legal Standards

To establish an Eighth Amendment or a Due Process claim based on unsafe or medically inappropriate living conditions, a plaintiff must establish that (1) he was incarcerated under conditions which posed a substantial risk of serious harm, and (2) prison officials acted with deliberate indifference to his health or safety.  *See Farmer*

---

[12] Because the due process rights of pretrial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner," and the same standard applies, cases cited that refer to the Eighth Amendment are thus applicable to the conditions of confinement claims alleged here.  *Revere v. Mass Gen. Hosp.*, 463 U.S. 239, 244 (1983).

*v. Brennan*, 511 U.S. 825, 834 (1994).

"The deliberate indifference standard embodies both an objective and a subjective prong." *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994).  Under the objective standard, a plaintiff must allege a deprivation "sufficiently serious" to constitute a constitutional violation.  *Hathaway*, 37 F.3d at 66 (quoting *Wilson v. Seiter*, 501 U.S. at 298).  In addition, "[b]ecause society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions- of-confinement' claim."  *Blyden v. Mancusi*, 186 F.3d 252, 263 (2d Cir. 199) (citing *Hudson v. McMillan*, 503 U.S. 1, 9 (1992) (only those deprivations denying "the minimal civilized measures of life's necessities" are sufficiently serious to form the basis of an Eighth Amendment violation) (internal quotations and citations omitted).

The objective prong can be satisfied by conditions of confinement, which, when combined, "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Davidson v. Murray*, 371 F. Supp. 2d 361, 370 (W.D.N.Y. 2005).  However, "[n]othing so amorphous as overall conditions can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.*

The subjective element of the Eighth Amendment analysis focuses on whether the defendant official acted with "a sufficiently culpable state of mind." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. at 300).

"Deliberate indifference" requires more than negligence, but less than conduct undertaken for the very purpose of causing harm. *Farmer*, 511 U.S. at 835.  In order for a prison official to act with deliberate indifference, he must know of and disregard an excessive risk to an inmate's health or safety. *Hathaway*, 37 F.3d at 66.  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id*.

Plaintiffs provide no specific facts other than "exposure," and list the names of jail personnel.  In his response, plaintiff Burroughs states that the jail was under their "supervision" and they "did nothing to clean up" the mold or lead.  (Dkt. No. 55, ¶ 21).  Plaintiffs allege no injury or consequence resulting from their "exposure."  This court does not find that plaintiffs allegations meet the objective prong required to establish a Constitutional violation, but even if the objective prong were met, plaintiffs have failed to show deliberate indifference on the part of the named defendants.

It is well-settled that personal involvement is required for assessments of damages in § 1983 actions. *See, e.g., Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (personal involvement is a prerequisite to the assessment of damages in a section 1983 case); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  Plaintiffs have not shown how any of the named defendants were involved in the alleged exposure to lead and mold, other than listing their names, associated with the alleged exposure. *See, e.g., Green v. Bauvi*, 792 F. Supp. 928, 941-942 (S.D.N.Y. 1992) (inmate may recover damages for unconstitutional conditions of confinement only from persons who created or were responsible for those conditions).

Plaintiffs' third cause of action is based on alleged denials of food, and that defendants Snyder, Skimmerhorn, Sutherland, McMannis, Jarvis, Voorheese, Rivernburg, Liese, and Warga spit in plaintiffs' food.  Plaintiffs fail to indicate with any specificity who did a particular action and when it occurred.  Plaintiffs' allegations are conclusory, and not sufficient to cross over the line into plausibility.  Conclusory allegations are insufficient to state constitutional claims.  *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).  Complaints relying on civil rights statutes must contain some specific allegations of fact indicating a deprivation of rights, instead of a "litany of general conclusions that shock but have no meaning."  *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (citing *inter alia Barr v. Abrams*, 810 F.2d at 363).  Therefore, plaintiffs' third and fourth causes of action based on their conditions of confinement should be dismissed.

### B.   Excessive Force

Plaintiffs' third claim is based in part on allegations of being "assaulted on a regular basis" by defendants Snyder, Skimmerhorn, Sutherland, McMannis, Jarvis, Voorheese, Rivernburg, Liese, and Warga between October 2006 to August 2008.

#### 1.   Legal Standards

Inmates enjoy Constitutional protection against the use of excessive force, and may recover damages under 42 U.S.C. § 1983 for a violation of those rights.  *Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992).  The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain."  *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Sims v. Artuz*, 230 F.3d 14, 20

(2d Cir. 2000).  To sustain a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements.  *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir.1999).

In order to satisfy the objective element of the constitutional standard for excessive force, the defendants' conduct must be "'inconsistent with the contemporary standards of decency.'"  *Whitely v. Albers*, 475 U.S. 312, 327 (1986) (citation omitted); *Hudson*, 503 U.S. at 9. "[T]he malicious use of force to cause harm constitute[s][an] Eighth Amendment violation per se[,]" regardless of the seriousness of the injuries.  *Blyden*, 186 F.3d at 263 (citing *Hudson*, 503 U.S. at 9).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Hudson*, 503 U.S. at 9–10 (citations omitted).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  *Sims*, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness."  *Id*. at 21 (citation omitted).  The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  *Id*.  (quoting *Hudson*, 503 U.S. at 7).  In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider:  the extent of the injury and the mental state of the defendant;

the need for the application of force; the correlation between that need and the amount

of force used; the threat reasonably perceived by the defendants; and any efforts made

by the defendants to temper the severity of a forceful response." *Scott v. Coughlin*,

344 F.3d 282, 291 (2d Cir. 2003).

### 2.    Application

Plaintiffs' general accusation of regular assault by a group of defendants,

without more, is insufficient to state a plausible claim based on a use of excessive

force.  Plaintiffs allege no specific injuries incurred by any particular plaintiff and

allege no specific details about any particular assault by any named defendant.

Plaintiffs' third claim based on a use of excessive force should be dismissed without

prejudice.

### C.    Medical Indifference

Plaintiffs claim that Doctor Hulbiki and Nurse Juliano were deliberately

indifferent to their medical needs because they did not treat them appropriately.

Deliberate indifference to serious medical needs constitutes cruel and unusual

punishment, in violation of the Eighth Amendment, as made applicable to the states

through the Fourteenth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  The

standards applied to assess the adequacy of medical care provided to pretrial detainees

under the Due Process Clause are the same as those applied to convicted prisoners

under the Eighth Amendment.  *Id. at* 69, 70–72; *Mayo v. County of Albany*, 357 Fed.

Appx. 339, 341(2d Cir. 2009).

13

### 1.   Legal Standards

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, plaintiffs must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  There are two elements to the deliberate indifference standard.  *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003).  The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind.  *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

The objective prong of the standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.'  *Bellotto v. County of Orange*, 248 Fed. Appx. 232, 236 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)).  If the "unreasonable care" consists of a failure to provide any treatment, then the court examines whether the inmate's condition itself is "sufficiently serious."  *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003).  When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone."  *Id.* at 185.  The standard for

14

determining when a deprivation or delay in a prisoner's medical need is sufficiently serious, contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain. *Bellotto v. County of Orange*, 248 Fed. Appx. at 236 (citing *Chance v. Armstrong*, 143 F.3d at 702 and *Smith v. Carpenter*, 316 F.3d at 187 (actual medical consequences are highly relevant)).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id*. at 835, 837.

A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. *Chance v. Armstrong*, 143 F.3d at 703. Nor does the fact that an inmate feels that he did not get the level of medical attention he deserved, or that he might prefer an alternative treatment, support a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986)). Even negligence in diagnosing or treating an inmate's medical condition does not constitute deliberate indifference. *Farmer v. Brennan*, 511 U.S. at 835. Thus, any claims of medical malpractice, or

disagreement with treatment are not actionable under Section 1983. *Ross v. Kelly*, 784 F. Supp. 35, 44-45 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (1992) (table).

### 2.    Application

Plaintiffs' fourth claim is based in part on alleged exposure to various parasites and diseases.  Plaintiffs' eighth claim is based on defendants Seeley, Spitz, Hussey, and Worth, supervisors at Greene County Jail, failure to properly supervise correctional officers dispensing medication, causing plaintiffs to receive incorrect medication and become sick.  (Compl. p. 12, Dkt. No. 55, ¶ 65–66).  Plaintiffs' eleventh claim is based on alleged MRSA infections, a reference to "blood began to leak out of the penis" and plaintiff Burroughs' hernia.  (Compl. p. 12).  As to the exposure to various parasites and diseases, plaintiffs allege no specific injury, not indicating who, if anyone, had MRSA or blood leaking out of his penis and the requisite deliberate indifference to that medical need.

Plaintiff Burroughs alleges that after he tested positive for tuberculosis, Doctor Hulbiki and Nurse Juliano failed to give him medicine.  (Burroughs's Response ¶ 33–34).  Plaintiff Burroughs attaches a copy of the form indicating his positive test for tuberculosis.  (Burroughs's Response Exhibit B).  However, this only establishes that he was seen by medical professionals, and he tested positive for tuberculosis.  Plaintiff Burroughs does not indicate if he suffered from any symptoms of tuberculosis.  He only states that he was housed with other inmates after receiving his diagnosis.[13]

---

[13] Plaintiff Burroughs appears to be attempting to assert the rights of other inmates. However, a litigant has no standing to assert the constitutional rights of others. *Carlen v.*

Because plaintiff Burroughs fails to allege any injury resulting from his diagnosis, he has failed to establish anything other than a disagreement with how medical professionals chose to treat him, which, as explained above, is insufficient to state a claim for deliberate indifference to a serious medical need.

Plaintiff Burroughs' hernia is a different matter.  Burroughs alleges that he met with Dr. Hulbiki on several occasions for treatment of his hernia, which was the "size of a softball."[14]  (Burroughs's Response ¶ 74).  Burroughs alleges that he received no treatment for the attendant pain and it was only after a court order that he was able to get surgery for his hernia at Columbia Hospital in Hudson, New York.  (Burroughs's Response ¶¶ 76–77).  After his hernia surgery, plaintiff Burroughs alleges that Dr. Hulbiki and Nurse Juliano failed to give him his prescribed pain medication, and the correctional officers who dispense medication failed to give him his prescribed pain medication.  (Burroughs's Response ¶¶ 67, 69–70).  He also alleges that the correctional officers "would hear me crying from the pain after my surgery and I would hear them laughing at me."  (Burroughs's Response ¶ 68).  However, plaintiff Burroughs does not specify which correctional officers were aware of his serious pain

---

*Department of Health Services of Suffolk*, 912 F. Supp. 35, 42 (E.D.N.Y. 1996) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

[14] Plaintiff Burroughs clarifies the details of his claim in his response.  As noted by the court in *Benitez v. Ham*, "the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint."  No. 9:04-CV-1159, 2009 WL 3486379, at *8 (N.D.N.Y. October 21, 2009) (citing, *inter alia, Washington v. James*, 782 F.2d 1134, 1138–39 (2d Cir. 1986)).

and ignored it.[15]

Plaintiff Burroughs has sufficiently stated a claim for deliberate indifference to a serious medical need as to Doctor Hulbiki and Nurse Juliano.  Defendants' motion to dismiss plaintiff Burroughs' Eighth Amendment claim of deliberate indifference to his serious medical need based on his hernia and extreme pain from hernia surgery should be denied.

### D.    Harassment

Plaintiffs' first cause of action is based on the alleged inappropriate touching that occurred between November 2006 to September 2007.

While allegations of sexual abuse may, in some circumstances, violate the Eighth Amendment, isolated incidents of harassment, involving verbal harassment and touching are not severe enough to be "objectively, sufficiently serious."  *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (quoting *Whitely v. Albers*, 475 U.S. 312, 319 (1986)).  In order to violate the Eighth Amendment, the "punishment" must be "objectively, sufficiently serious," and the official must have had a "sufficiently culpable state of mind."  *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  The plaintiff in *Boddie* was also claiming an Eighth Amendment violation based upon allegations of sexual abuse.  *Id.*  The court held that the "isolated episodes of harassment and touching alleged by Boddie are despicable and, if true, they may potentially be the basis of state tort actions.  But they do not involve a harm of federal

_____

[15] Plaintiff Burroughs is not attempting to sue the correctional officers who allegedly heard him.

constitutional proportions . . . ." *Id.*

In this case, plaintiffs allege that defendant Beojekian conducted strip frisks that rose to the level of sexual harassment.  Pursuant to *Boddie*, allegations such as those made by plaintiffs do not rise to the level of constitutional violations regardless of the impropriety of the action.[16]  *Id.*  Thus, plaintiffs' claim based on sexual harassment should be dismissed.

Plaintiffs' second cause of action is based on alleged racial slurs and threats made between October 2006 and August 2008.  However, verbal harassment, "unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem does not constitute the violation of any federally protected right and, therefore, is not actionable under . . . § 1983."  *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998); *see also Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (a guard calling a plaintiff names did not establish any "appreciable injury" and dismissal of the claim was proper).  Plaintiffs in this case did not assert, nor does the record support, any allegations of physical injury related to the verbal harassment,

---

[16] The court notes that numerous courts have held that allegations of sexual abuse during frisk searches do not implicate the Eighth Amendment.  *See Morrison v. Cortright*, 397 F. Supp. 2d 424 (W.D.N.Y. 2005) (allegation that correctional officer shone light up inmate's anus, ran his middle finger between inmate's buttocks, causing inmate to urinate on himself, and rubbed his penis against inmate's buttocks during strip frisk failed to implicate the Eighth Amendment); *Davis v. Castleberry*, 364 F. Supp. 2d 319, 321 (W.D.N.Y. 2005) (allegation that correction officer grabbed inmate's penis during pat frisk insufficient); *Montero v. Crusie*, 153 F. Supp. 2d 368 (S.D.N.Y. 2001) (allegation that correctional officer, on several occasions, squeezed inmate's genitalia during pat frisks did not implicate the Eighth Amendment, especially when inmate did not allege physical injury); *Williams v. Keane*, No. 95 Civ. 379, 1997 U.S. Dist. LEXIS 12665, 1997 WL 527677, at *11 (S.D.N.Y. Aug. 25, 1997) (allegation that correctional officer put his hand down inmate's pants and fondled inmate's genitals during frisk search failed to implicate the Eighth Amendment).

however inappropriate it might have been.  Even accepting plaintiffs' allegations as true, this court finds that plaintiffs have failed to state a claim, and their second cause of action based on verbal harassment should be dismissed.

## V.    Grievances and Investigations

Plaintiffs' fifth and tenth causes of action pertain to grievances and defendants' alleged failure to respond or investigate them.  The law is well-settled that inmates do not have a constitutional right to grievance procedures.  *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003); *Davis v. Buffardi*, No. 0:01-CV-0285, 2005 U.S. Dist. LEXIS 45487, 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) (Magnuson, J.) ("[p]articipation in an inmate grievance process is not a constitutionally protected right") (citations omitted).  Furthermore, a violation of the inmate grievance procedures does not give rise to a claim under section 1983.  *Cancel v. Goord*, No. 00 CIV. 2042, 2001 U.S. Dist. LEXIS 3440, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001).

To the extent that plaintiffs attempt to assert a separate constitutional claim of "failure to investigate," the law is also clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials.  *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008) (collecting cases).  In order for a constitutional violation to have occurred, the investigation *itself* must have resulted in a deprivation of a constitutional right.  *Faison v. Hash*, 03-CV-6475P, 2004 U.S. Dist. LEXIS 29151 at *6, 2004 WL 944523 (W.D.N.Y. Apr. 23, 2004) (citing *Malloy v. City of New York*, 1996 U.S. Dist. LEXIS 16417 at *6, 1996 WL 648927 (S.D.N.Y.

20

Nov. 7, 1996) (holding that warden's alleged failure to investigate assault by correctional officer did not give rise to constitutional violation, where plaintiff failed to show that warden could have anticipated or had other direct involvement in the assault); *Gomez v. Whitney*, 757 F.2d 1005 (9th Cir. 1985) (a claim against a police department for failure to investigate is insufficient to state a civil rights claim without another recognized constitutional right being involved).

First, contrary to plaintiffs' allegations that defendants failed to investigate, Beojekian's Arrest Report,[17] submitted as Exhibit A to plaintiff Burroughs's own opposition papers (Dkt. No. 55), indicates that an investigation was conducted and mentions that Aaron Beojekian "had numerous allegations regarding sexual misconduct with the inmates." (Pls' Opp. to Mot. to Dismiss, Ex. C). In any event, plaintiffs had no constitutional right to any investigation of their grievances. Accordingly, plaintiffs' claims based on the alleged failure to investigate their grievances may be dismissed for failure to state a constitutional claim.

## VI.    <u>Mail Tampering and Access to Courts</u>

Plaintiffs allege that their access to the courts was hindered due to the alleged inadequacy of the law library at the Greene County Jail. Plaintiffs also claim that they were not permitted to contact their attorneys as much as they would have liked.

In order to establish a claim that a prisoner's right of access to the courts has

---

[17] Beojekian was arrested on January 10, 2008, and the report indicates that the reasons for the arrest were the allegations of sexual misconduct by Beojekian involving inmates at the Greene County Jail.

been violated, actual injury must be shown. *See Lewis v. Casey*, 518 U.S. 343, 351–52 (1996). Inmates' right of access to the courts is not "an abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351–54. To establish a violation, "the inmate . . . must . . . demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351. The same standard applies when inmates claim that legal mail has been obstructed. *See Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). Plaintiffs must allege that the defendants' actions hindered their "efforts to pursue a legal claim." *Id.* (citing *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 1997).

Prior to the Supreme Court's decision in *Lewis*, the Second Circuit had held that "an isolated instance" of interference with an inmate's legal mail delivery was insufficient to state a First Amendment claim, either with respect to the mail itself or with respect to access to courts, where "the infraction was not in accordance with official policy or practice and where no showing had been made that the inmate's right to access to courts was chilled . . . ." *Washington v. James*, 782 F.2d 1134, 1139 (2d Cir. 1986) (citation omitted). *Lewis* also suggests that the actual harm must be to direct or collateral attacks on the inmate's conviction, or to a challenge to the conditions of confinement. 518 U.S. at 355. "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" *Davis v. Goord*, 320 F.3d at 352 (citing *Jermosen v.*

22

*Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)).

Plaintiffs' right of access to the courts was not abridged in any way by defendants' actions, even assuming that plaintiffs' allegations are true.  Plaintiffs' allegations are conclusory statements that the law library is "inadequate," and "outdated."  (Compl. p. 11).  If, as their allegations suggest, plaintiffs had been appointed attorneys, no access to any law library was required.  *See Bourden v. Loughgren*, 386 F.3d 88, 93 (2d Cir. 2004) ("the appointment of counsel can be a valid means of satisfying a prisoner's right of access to the courts").

Plaintiffs only allegations of injury is that they were "unable to file motions on our behalf that could have been fruitful to our criminal cases."  (Compl. p. 11).  These allegations are insufficient to state a plausible claim for denial of access to the courts.  Accordingly, plaintiffs' sixth, seventh, ninth, and twelfth claims related to the alleged deficiencies in the quality of the law library, the lack of access to legal materials, and limited access to attorneys should be dismissed.

## VII.   <u>First Amendment</u>

Plaintiffs' thirteenth claim is based on defendants' alleged violation of the Free Exercise Clause of the First Amendment.  The First Amendment guarantees the right to the free exercise of religion.  *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).  "Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause."  *Ford v. McGinnis,* 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  This right "is not absolute or unbridled, and is subject to valid

penological concerns, including those relating to institutional security." *Johnson v. Guiffere,* 04-CV-57, 2007 WL 3046703, at *4, 2007 U.S. Dist. LEXIS 77239 (N.D.N.Y. Oct.17, 2007).  The Free Exercise Clause extends "beyond mere attendance at congregate religious services into other aspects of prison life including, pertinently, that of an inmate's diet. . . ." *Id.*  The Second Circuit has held that it is "clearly established that a prisoner has a right to a diet consistent with his or her religious scruples. . . ." *Ford,* 352 F.3d at 597 (citations omitted).  Therefore, to "deny prison inmates the provision of food that satisfies the dictates of their faith . . . unconstitutionally burden[s] their free exercise rights." *McEachin v. McGuinnis,* 357 F.3d 197, 203 (2d Cir. 2004).

Plaintiffs do not specify who among them, if any, is Rastafarian, Muslim, or Jewish.  They do not specify who denied them meals appropriate to their specific religious beliefs and how their specific religious beliefs were abridged, other than conclusory allegations of denial of Rastafarian or Muslim services, special diets, or celebration of Ramadan or Passover.  The defendants that plaintiffs associate with these allegations are Sheriff Hussey, Sheriff Seeley, Undersheriff Worth, Superintendent Spitz, and Lieutenant Schnur.  Each defendant's duties is described as "manages the jail's daily operations and executes the jail's policies."  (*See Civil Cover Sheet*, Dkt. No. 1-1 at ¶¶ 1–4, 14).  Plaintiffs appear to be attempting to establish personal involvement based on these defendants' supervisory roles at Greene County Jail.  *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (holding that a position in a hierarchical command structure, without more, is insufficient to establish personal

involvement).  Plaintiffs' allegations are insufficient to establish personal involvement

on the part of the named defendants, and do not cross the line into plausibility to

render them adequate enough to state a claim.  Plaintiffs' thirteenth claim should be

dismissed.

## VII.  **Qualified Immunity**

Qualified immunity generally protects governmental officials from civil liability

"insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982).  However, even if the constitutional privileges are clearly

established, a government actor may still be shielded by qualified immunity "if it was

objectively reasonable for the public official to believe that his acts did not violate

those rights."  *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir.1991) (citing

*Magnotti v. Kuntz*, 918 F.2d 364, 367 (2d Cir.1990).

In determining whether qualified immunity applies, the court may first consider

whether "the facts alleged show the [defendant's] conduct violated a constitutional

right."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001), modified by *Pearson v. Callahan*,

___ U.S. ___, 129 S. Ct. 808, 811 (2009) (holding that, "while the sequence set forth

[in Saucier] is often appropriate, it should no longer be regarded as mandatory in all

cases").  "If no constitutional right would have been violated were the allegations

established, there is no necessity for further inquiries concerning qualified immunity."

*Saucier*, 533 U.S. at 201.  This court need not address qualified immunity with respect

to those of plaintiff's claims which do not state actionable violations of his

constitutional rights.

As to plaintiff's deliberate indifference claims against defendants Hulbiki and Juliano, it was clearly established, as of the time of the alleged incidents in 2007, that plaintiffs had a Constitutional right to be free from deliberate indifference to their medical needs.  *See, e.g., Estelle v. Gamble*, 429 U.S. 97 (1976); *Smith v. Carpenter*, 316 F.3d 178 (2d Cir. 2003).  Thus, accepting plaintiff's allegations as true, qualified immunity cannot protect defendants Hulbiki and Juliano at this time, because a reasonable person in their position would or should have known that deliberate indifference to medical needs was a constitutional violation.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the State Defendants' Motion (Dkt. No. 22) be **GRANTED**, and plaintiffs' claims as to defendants Robert Cuttita and Deborah Clark be **DISMISSED IN THEIR ENTIRETY**, and it is further

**RECOMMENDED**, that the Additional County Defendants' Motion (Dkt. No. 79) be **GRANTED**, and plaintiffs' claims as to defendants Peter Bennett, John Jarvis, Ken Liese, Brian McMannis, Gregory Seeley, Donnie Skimmerhorn, Michael Spitz, Mike Sutherland, Edward Vorheese, Ed Warga, and Steven Worth be **DISMISSED IN THEIR ENTIRETY**, and it is further

**RECOMMENDED**, that county defendants' motion to dismiss (Dkt. No. 49) be **GRANTED IN PART AND DENIED IN PART** and all plaintiffs' claims be

26

**DISMISSED IN THEIR ENTIRETY** as to all defendants except for plaintiff Burroughs' claim based on deliberate indifference to his serious medical need as to defendants Hulbiki and Juliano**.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**Dated:** February 4, 2011

Hon. Andrew T. Baxter
U.S. Magistrate Judge