UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES PINE, et al.,

                                                  Plaintiff,

   vs.

GREG SEALLY, et al.,                                    9:09-CV-1198
                                                                          (DNH/ATB)

                                                Defendants.
_____

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

     This matter was referred by U.S. District Judge David N. Hurd, for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). Plaintiffs filed this civil rights complaint, pursuant to 42 U.S.C. § 1983, regarding incidents that occurred during their pretrial incarceration at Greene County Jail (Greene).  Three motions to dismiss were filed: one on behalf of a group of state defendants, one on behalf of a group of county defendants, and one on behalf of a separate group of county defendants. (Dkt. Nos. 22, 49, 79).  On March 9, 2011, all three motions to dismiss were granted, except for plaintiff Burroughs's claim of deliberate indifference to serious medical needs by Defendant Dr. Hubicki.[1]  (Dkt. No. 92).

---

[1] Dr. Hubicki's name was spelled "Hulbiki" in the complaint.  The correct spelling of his name is now clear from Dr. Hubicki's affidavit. (Dkt. No. 111-10).  The court will use the correct spelling.

Presently before the court is plaintiff Burroughs's motion to compel discovery (Dkt. No. 105),[2] to which defendant Hubicki responded (Dkt. No. 108), and defendant Hubicki's motion for summary judgment (Dkt. No. 111), to which plaintiff Burroughs responded (Dkt. No. 116). Defendant Hubicki replied to plaintiff Burroughs's response. (Dkt. No. 117). For the following reasons, the court recommends granting defendant's motion for summary judgment and denying plaintiff's motion to compel as moot.

## DISCUSSION

### I.  Facts and Claims

The complaint contains sections that are separated according to the claims asserted and the dates associated with those claims.[3] The remaining claim[4] before the court is that from October 2006 to August 2008, defendant Hubicki "refused to properly treat [plaintiff]" and refused to let plaintiff "see an emergency room doctor until . . . a hernia got worse." (Compl. 12). Plaintiff seeks significant compensatory and punitive damages.

---

[2] Plaintiff filed a motion to compel after defendant objected to some of plaintiff's discovery requests. Because the court is recommending dismissal of the complaint, plaintiff's motion to compel should be denied as moot.

[3] Plaintiffs do not number the paragraphs or pages in their complaint, so the court will refer to material by citing to the page number assigned by the Case Management/Electronic Case Files (CM/ECF) system.

[4] The other claims in the complaint were dismissed (Dkt. No. 92), and for the sake of clarity, the court only includes the facts related to the surviving claim of plaintiff Burroughs.

2

## II. Summary Judgment

### A. Legal Standards

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed. R. Civ. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990). "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment." *Salahuddin v. Coughlin*, 674 F. Supp. 1048, 1052 (S.D.N.Y. 1987) (citation omitted). A dispute about a genuine issue of material fact exists if the evidence is such that "a reasonable [fact finder] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In meeting its burden, the party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56 (c)(1)(A). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical

doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247–48.

### III.     Conditions-of-Confinement/Medical Indifference

#### A.     Legal Standards

Allegations of mistreatment of pretrial detainees in state custody are brought under the Due Process Clause of the Fourteenth Amendment. *See Caiozzo v. Korman*, 581 F.3d 63, 69 (2d Cir. 2009). It has been held that because a pretrial detainee has not been "convicted," the proper inquiry is whether the conditions of confinement amount to punishment under the Due Process Clause, not whether the "punishment" is cruel and unusual under the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (contrasting sentenced prisoners with pretrial detainees). However, the same standard applies to claims of deliberate indifference to a serious threat to the health or safety of a person in custody, regardless of whether they are brought under the Eighth Amendment, relating to convicted prisoners, or under the Fourteenth Amendment for pretrial detainees.[5]  *See Caiozzo v. Korman*, 581 F.3d at 72.

In order to state a claim based on constitutionally inadequate medical treatment, plaintiffs must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. at 106. There are two elements to the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d

---

[5] Because the due process rights of pretrial detainees are "at least as great as the Eighth Amendment protections available to a convicted prisoner," and the same standard applies, cases cited that refer to the Eighth Amendment are thus applicable to the conditions of confinement claims alleged here. *Revere v. Mass Gen. Hosp.*, 463 U.S. 239, 244 (1983).

178, 183–84 (2d Cir. 2003). The first element is objective and measures the severity of the deprivation, while the second element is subjective and ensures that the defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

The objective prong of the standard is satisfied "when (a) the prisoner was 'actually deprived of adequate medical care,' meaning prison officials acted unreasonably in response to an inmate health risk under the circumstances, and (b) 'the inadequacy in medical care is sufficiently serious.'" *Bellotto v. County of Orange*, 248 F. App'x 232, 236 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006)). When a prisoner alleges "a temporary delay or interruption in the provision of otherwise adequate medical treatment," the court must focus on the seriousness of the particular risk of harm that resulted from the challenged delay or interruption, rather than the prisoner's underlying medical condition alone." *Id*. at 185. The standard for determining when a deprivation or delay in a prisoner's medical need is sufficiently serious, contemplates a condition of urgency that may result in degeneration of the patient's condition or extreme pain. *Bellotto v. County of Orange*, 248 F. App'x at 236 (citing *Chance v. Armstrong*, 143 F.3d at 702 and *Smith v. Carpenter*, 316 F.3d at 187 (actual medical consequences are highly relevant)).

The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S.

5

825, 847 (1994). A plaintiff is not required to show that a defendant acted or failed to act "for the very purpose of causing harm or with knowledge that harm will result," but must show that the official was aware of facts from which one could infer that "a substantial risk of serious harm" exists, and that the official drew that inference. *Id*. at 835, 837.

A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference. *Chance v. Armstrong*, 143 F.3d at 703. Nor does the fact that an inmate feels that he did not get the level of medical attention he deserved, or that he might prefer an alternative treatment, support a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001) (citing *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986)). Even negligence in diagnosing or treating an inmate's medical condition does not constitute deliberate indifference. *Farmer v. Brennan*, 511 U.S. at 835. Thus, any claims of medical malpractice, or disagreement with treatment are not actionable under Section 1983. *Ross v. Kelly*, 784 F. Supp. 35, 44–45 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (1992) (table).

B.   **Application**

Plaintiff Burroughs alleges that he met with Dr. Hubicki on several occasions for treatment of his hernia, which was the "size of a softball."[6] (Burroughs's

---

[6] Plaintiff Burroughs clarifies the details of his claim in his response. As noted by the court in *Benitez v. Ham*, "the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint." No. 9:04-CV-1159, 2009 WL 3486379, at *8 (N.D.N.Y. October 21, 2009) (citing, *inter alia, Washington v. James*,

Response in Opposition to Motions to Dismiss (Burroughs's Response) ¶ 74, Dkt. No. 55). Burroughs alleges that he received no treatment for the attendant pain, and it was only after a court order that he was able to get surgery for his hernia at Columbia Hospital in Hudson, New York. (Burroughs's Response ¶¶ 76–77). After his hernia surgery, plaintiff Burroughs alleges that Dr. Hubicki and Nurse Juliano failed to give him his prescribed pain medication, and the correctional officers who dispensed medication failed to give him his prescribed pain medication. (Burroughs's Response ¶¶ 67, 69–70). He also alleges that the correctional officers[7] "would hear me crying from the pain after my surgery and I would hear them laughing at me." (Burroughs's Response ¶ 68).

Plaintiff entered Greene in December 2006. (Pl.'s Dep. 11, Dkt. No. 111-9). Plaintiff's medical record indicates that on December 13, 2006, Dr. Hubicki stated that plaintiff had a large hernia in his left groin that "needs to be taken care of" and "needs surg. consult if still here." (Dkt. No. 113 at 16).[8] Plaintiff was released from custody that same month when the criminal charge against him was dropped. (Pl.'s Dep. 11, Dkt. No. 111-9; *see also* Dkt. No. 113 at 44). During his deposition in this case, plaintiff testified that he returned to Greene in March 2007. (Pl.'s Dep. 12, 14–15, Dkt. No. 111-9). However, between the time when he was released in December and

---

782 F.2d 1134, 1138–39 (2d Cir. 1986)).

[7] Plaintiff Burroughs is not attempting to sue the correctional officers who allegedly heard him.

[8] The pages of defendant's exhibits are not numbered. Therefore, the court will cite to them using the page numbers assigned by the Case Management/Electronic Case File (CM/ECF) system.

when he returned in March 2007, he did not have the hernia examined or treated by a doctor. *Id.*

When plaintiff returned in March 2007, Dr. Hubicki stated in plaintiff's medical record that plaintiff still had the hernia in his left groin that he noticed the last time plaintiff was at Greene, and that plaintiff "had pain," but no change in his bowel movements. (Dkt. No. 113 at 12). A medical consultation was scheduled with Dr. Pearlstein, a surgeon at Columbia Memorial Hospital, who stated on April 18, 2007, that plaintiff's hernia had been present for over six months, and that it was causing "some discomfort." (Dkt. No. 113 at 57). Dr. Pearlstein concluded that the hernia would require repair, but that plaintiff was in "good health." *Id.*

Dr. Hubicki stated on June 22, 2007, that plaintiff's hernia was very large, but he had been unable to get it fixed due to an alleged escape attempt, and plaintiff was allegedly considered a flight risk during transport. (Dkt. No. 113 at 11). Plaintiff was instructed to notify someone if he experienced severe pain with constipation. *Id.* Plaintiff testified that he was not charged with escape, but with promoting prison contraband, and spent two to three months in the special housing unit, where he was confined to his cell for twenty-three hours per day. (Pl's. Dep., Dkt. No. 111-9 at 16–18).

Plaintiff testified that when he entered the jail in March 2007, there was "some pain" due to the hernia and that it got worse as time went on. (Pl.'s Dep., Dkt. No. 111-9 at 23). Plaintiff explained that the hernia would "stay harder longer," at which times the hernia was more painful and made it difficult for plaintiff to walk. *Id.*

8

Plaintiff testified at his deposition that he never had trouble eating or passing gas, but was constipated "here and there not all the time." (Pl.'s Dep., Dkt. No. 111-9 at 24–25). Dr. Hubicki affirmed that in April 2007, Greene personnel asked him if the surgery was needed immediately, and that in Dr. Hubicki's medical opinion, there was no urgency for the surgery prior to September 2007. (Hubicki Aff. ¶9, Dkt. No. 111-10). Dr. Hubicki affirmed that he examined plaintiff, and concluded that there was no blockage in the area of the hernia due to plaintiff's lack of symptoms of blockage such as inability to pass gas, lack of appetite, and constipation. *Id*. Dr. Hubicki stated that when a hernia is large, as plaintiff's was, the risk of blockage is low. *Id.*

Dr. Hubicki examined plaintiff on August 1, 2007, who was complaining of severe pain from his hernia. (Dkt. No. 113 at 9). Dr. Hubicki stated that plaintiff had "discomfort" with his inability to reduce the hernia on his own, and noted that plaintiff was "laughing and telling nurse and I [sic] [that] he is in pain." *Id.* Dr. Hubicki stated that plaintiff walked well, and that the hernia was reducible without pain to plaintiff. *Id.* Dr. Hubicki concluded that the hernia was "so large" that it was less likely to incarcerate,[9] and that the combination of the lack of tenderness, with the ability to reduce the hernia, made incarceration "less likely." *Id.*

Dr. Hubicki examined plaintiff again on August 31, 2007. (Dkt. No. 113 at 8). Plaintiff was complaining of increased pain from his hernia. *Id.* Plaintiff had not been able to reduce the hernia himself and had experienced nausea and constipation. *Id.* Plaintiff denied feeling chills or feverish. *Id.* Dr. Hubicki stated that the hernia was

---

[9] An incarcerated hernia is swollen and fixed within its sac. *The Bantam Medical Dictionary* 200 (rev. ed. 1990).

9

mostly reducible, but he could not get the last part of the bowel to reduce, and plaintiff experienced pain with further pushing. *Id.* When plaintiff stood up, the hernia came back down. *Id.* Dr. Hubicki concluded plaintiff's hernia was possibly incarcerated and stated that plaintiff needed evaluation at the emergency room. *Id.* Dr. Hubicki affirmed that it was not until he examined plaintiff on August 31, 2007, that he determined that surgery was medically necessary. (Hubicki Aff. ¶14, Dkt. No. 111-10).

Plaintiff was seen at the Columbia Memorial Hospital emergency room on August 31, 2007. (Dkt. No. 113 at 48, 52). Dr. Carol Curran examined plaintiff and stated that he had normal bowel sounds, and that the hernia was mildly tender to palpation. (Dkt. No. 113 at 53–54). Plaintiff was discharged, and his condition was noted as "stable." *Id.* Plaintiff was instructed to follow-up with Dr. Pearlstein. *Id.*

Dr. Pearlstein surgically repaired plaintiff's hernia on September 18, 2007. (Dkt. No. 113 at 64–65). Plaintiff was prescribed Vicodin for pain. (Dkt. No. 113-1 at 28). Dr. Hubicki listed the Vicodin prescription in his notes after examining plaintiff on September 19, 2007. (Dkt. No. 113 at 6–7). On September 26, 2007, he decided to "continue pain meds for now." *Id.* Plaintiff's Medication Log indicates a prescription for Vicodin beginning on September 18, 2007, and plaintiff's initials indicate he received Vicodin numerous times per day on September 29–26, 2007. (Dkt. No. 113-2 at 6, 9). Plaintiff testified at his deposition that he was never given any pain medication by Dr. Hubicki or anyone else. (Pl.'s Dep. 25, 34, Dkt. No. 111-9). Plaintiff testified that when he complained to Dr. Hubicki about the lack of

10

medication, Dr. Hubicki would "look at his paperwork and tell [plaintiff] something like: Oh, I see here that you have been getting pain medicine." (Pl.'s Dep. 34, Dkt. No. 111-9).  Dr. Hubicki affirmed that because he does not typically administer medication at the jail, he relies on the medication logbook to determine whether inmates are receiving medication to prevent abuse by inmates.  (Hubicki Aff. ¶16, Dkt. No. 111-10).

It is clear that plaintiff received medical attention for his hernia.  As described above, Dr. Hubicki monitored plaintiff's hernia, seeing plaintiff numerous times before and after his hernia surgery.  When in Dr. Hubicki's medical judgment surgery became necessary, he had plaintiff taken the same day to the emergency room.  Surgery was then scheduled, and successfully performed later that month.  Plaintiff alleges that he never received any pain medication.  However, as described above, Dr. Hubicki followed up on plaintiff's complaints by verifying in the medication logbook that plaintiff was receiving the medication, as indicated by plaintiff's initials in the logbook.  Whether or not plaintiff actually received pain medication is irrelevant to his claim against Dr. Hulbicki, who responded to plaintiff's complaint by checking the log and continuing the prescription.  Dr. Hubicki repeatedly provided medical care to plaintiff for his hernia.  Plaintiff may disagree with the course of treatment he received, but it is insufficient to establish deliberate indifference by Dr. Hulbicki.  Accordingly, no issue of fact exists as to whether Dr. Hulbicki was deliberately indifferent to plaintiff's serious medical needs, and defendant should be granted summary judgment.

## IV. Qualified Immunity

Defendant asserts that he is entitled to qualified immunity in connection with plaintiff's claims. In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), modified by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (holding that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory" in all cases). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. This court need not address qualified immunity with respect to plaintiff's various causes of action because, as discussed above, plaintiff has not established any violation of his constitutional rights.

## V. Defendant Beojekian

Defendant Beojekian was served on November 4, 2010. (Dkt. No. 73). Defendant Beojekian has failed to file an answer and otherwise participate in this case. All of the plaintiffs who asserted claims against defendant Beojekian have been previously dismissed. (Dkt. No. 92). Because plaintiff asserts no claims against defendant Beojekian, the complaint should be dismissed as to defendant Beojekian.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the complaint be **DISMISSED AS TO DEFENDANT BEOJEKIAN**, and it is further

**RECOMMENDED**, that defendant Hubicki's motion for summary judgment (Dkt. No. 111) be **GRANTED**, and plaintiffs' complaint be **DISMISSED IN ITS ENTIRETY**, and it is further

**RECOMMENDED**, that plaintiff's motion to compel be **DENIED AS MOOT**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

**Dated:** May 3, 2012

*[signature]*
Hon. Andrew T. Baxter
U.S. Magistrate Judge